Welcome to the third day of our panel, and Judge Grant and I are very happy and honored to have with us Judge Eugene Seiler from the Sixth Circuit. He is a frequent visitor and helper to our circuit, although he hasn't come to Atlanta too much. But we're glad to have him here. He has a distinguished career. He's been a U.S. attorney, a district judge, served our country in the Navy, and has been on the Sixth Circuit for a little while. So we're very glad to have him here with us. You know the lighting system. When the light goes yellow, that means that your time is drawing to a close. So just bring your remarks to your conclusion. If we take you beyond the red light, then don't worry. We'll just keep going. You're on our time and not yours. And with that, we're ready to begin with our first case, Ira Jerome Millender v. United States, case number 18-11029. How do I pronounce your last name? Salant. Salant. Ms. Salant. Good morning. May it please the Court, Counsel, my name is Megan Salant, and I represent Mr. Millender. This Court granted a Certificate of Appealability so that it could consider whether Mr. Millender is entitled to a reduced sentence under the Supreme Court's decision in Johnson. And that decision turns on whether or not he has three prior convictions that qualify under the Act. When Johnson eliminated the residual clause, one of Mr. Millender's predicates, his shooting a firearm from a vehicle, no longer qualified. And so he was left with a possession with intent to distribute cocaine, which he doesn't dispute as a qualifying offense, and two convictions for aggravated batteries that we would say arose out of one criminal episode and therefore should only count as one predicate conviction. Now, Mr. Millender raised the two convictions, the two incidents versus one incident on direct appeal, correct? Yes, ma'am. He raised it at sentencing and then again on direct appeal. And on direct appeal, this Court chose not to address the issue because they consider the error harmless because at the time we didn't have Johnson and so his other conviction counted under the residual clause. So he's pursued this issue all along and this is really the only opportunity that this Court has had to consider the issue and have it not be frivolous based on the other prior convictions. Let's talk about, let's talk about the, because I have some procedural issues for you in a second, but let's talk about the substantive one first. We'll take them in reverse order. What's the principle of law that you would have us adopt with regard to whether or not these were committed on different occasions? Well, I wouldn't ask you to adopt any new principle. I would just ask the Court to apply the principle that it has in the past. So the three sort of factors that the Court has considered in the past with regards to whether or not two crimes are separate for the purposes of the Armed Career Criminal Act just broadly are time, place, and the number of victims. In Mr. Millender's case, the only one of those that separates these is the number of victims. They happened in the same time, they happened in the same place, and even with regard to the same victims, we don't believe that the government presented enough evidence to demonstrate that there was a separate intent or that he, that there was any break in time between the shooting of the gun. You know, it was two shots, but it's not clear that he aimed twice or that there was a pause or anything, just that he pulled the trigger twice. That's all we know. What's the standard for how much evidence we need about his forming of a separate intent? So the government needs to show by a preponderance of the evidence that, well, that there were two separate crimes. It doesn't talk about intent specifically, but I guess you would say that a preponderance of the evidence that there were, there was enough time for him to have the intent to commit one crime, pause, think about, you know, think about committing a second crime and then to do that. So by a preponderance of the evidence. What if there was a, and I know this paragraph in the pre-sentence investigation report provides no information about this, so this is hypothetical. Correct. If there was a time lag of about, let's say, 30 seconds between the shots, what do you think the answer would be? Because if we get to that issue, we have to figure out not only the result, but a way to explain the result and come up with an articulable principle. Sure. Well, and again, I wouldn't ask the court to come up with a new principle. I think that the principles that we have now in prior cases cited by this court, it is establishes that these were two part of the same episode. So, but let's go back to your scenario. I would say, in our opinion, that 30 seconds, I don't think there's a definable time. No, I know. I agree with you on that, but so 30 seconds, 60 seconds? I would say not enough. I think that if it, I would say that if it's part of the same argument, the same course of events, you know, there's not, we don't have enough evidence. We just don't have enough to know. I mean, so 30 seconds because he was reloading his gun or 30 seconds because he shot first and then the other victim said something that made him more angry and so he shot again? I mean, I think that you can't pin it down to a time because time isn't enough. I think it's, you have to take the whole circumstances, the whole scenario and decide, you know, was there enough time to make a clear decision and were there facts to support that this was a clear, conscious effort or decision to move on to the next crime? Was this brought up at the time of the original sentencing? Yes, sir. Okay, and the court ruled against it? Well, what the court decided was that it didn't need to reach the decision because there were other convictions that supported the ACCA enhancement and so actually in the statement of reasons, the court wrote, I don't have the exact language in front of me, but something to the effect of, you know, the court finds that these aggravated battery convictions were separate offenses, but it is not necessary to make this finding in order to impose the ACCA sentence, which is why Mr. Millender then brought it on direct appeal to this court, but then, of course, this court kind of made the same finding that it doesn't really matter at this point. You know, it only matters now because of Johnson. Then did any court after that make the same decision? Was it brought up in the post-conviction proceedings? Um, as far as like a timing, whether or not they're separate? Whether they're separate offenses. I'm actually not, I'm not aware of that, no. Can we talk about the procedural issues now? Sure. So, the government argues that our en banc decision in Zak versus Tucker is sort of an absence of your two versus one argument. Correct. So, this is your chance to tell us why not. So, I would, um, we maintain that the, that, well, it's multiple layers. So, first of all, um, it's just one claim. All we're raising is a Johnson claim, and just as this court said just a couple weeks ago in, in tribute, the supplemental authority I submitted earlier this week, it's a, the Johnson, I'm sorry, a Johnson claim has two prongs. And so, we would say that it's only, there's only one timeliness issue. It's whether or not the Johnson claim was timely. So, the Johnson, so a Johnson claim requires two things. One, to show that the, the lower court relied on the residual clause, which nobody disputes that here, it clearly did, because that's the only way we get the shooting a firearm from the vehicle conviction in. And then it has to, and then as part of that same Johnson claim, the defendant has to demonstrate that he doesn't have three other prior convictions that apply to his sentence. So, there's only one timeliness, um, analysis. And it's whether or not Johnson was brought, the Johnson claim was brought in a timely manner. And in this case, it was. Right. The government's position is, I think, is that although that general framework you articulated is exactly right, you cannot then make a non-Johnson based argument to try to show that you don't have three remaining ACCA predicates. Sure. Sure. So, um, the, I understand what the government's argument is, but I don't know, I don't know how else the defendant would be able to present this argument to the court. I mean, he's pursued, he's pursued the issue all along. Um, and so, how do you, how, we're not asking the court to apply, it's not like a decamp question, we're not asking the court to look at, you know, case law that has come out since and now it's untimely, like in Beeman, and so we're, you know, we're trying to, he's trying to get you to apply a new legal analysis. All we're doing is counting his prior convictions. So, all we're asking the court to do is count those convictions. There's no new, we're not asking the court to apply any new law or any new, um, legal framework. This is something that's always been in existence. All we're doing is counting his prior convictions. Does the certificate of appealability preclude you from bringing this up here? The untimeliness issue? Yeah. Well, I didn't raise the untimeliness issue. The certificate of appealability specifically lays out the issue that this Court is going to consider. It was this Court's certificate of appealability, not the district court's, although the district court did find that the motion, his motion was timely. So the certificate of appealability granted by this Court, yes, all it said was that it would consider, that this Court would consider whether or not the two prior convictions were separate for purposes of the Armed Care Criminal Act. So it is, it definitely is outside the certificate of appealability, yes. Could Mr. Milliner have even brought a timely habeas claim on, or a meritorious habeas claim on this issue since he actually raised it on direct appeal? No, I don't see what he could have brought. He actually, he actually tried to. He tried to do exactly that. That's how, that's how the ball kind of got rolling in this case, is that before Johnson even happened, he filed a habeas raising that exact issue, and then our based on our, you know, legal education realized that that was not a good issue, you know, it wasn't an issue because he had already raised it. And so it had already, you know, it had already been addressed essentially, or not addressed on the merits, but considered. All right. Thank you very much. Thank you. You saved your time for rebuttal. Mr. Grogan. Good morning, Your Honor, and may it please the Court. My name is Andrew Grogan. I represent the United States. I prepared an outline of how to take the issues, but since the Court was discussing timeliness, I thought it might be useful to begin there if that's acceptable. However you want. So the timeliness argument that we're raising is based, starts first with an assessment of what a Johnson claim is. Under Beeman, the essential requirements for a Johnson claim is to determine but-for causation. Did the residual clause cause the ACCA enhanced sentence? There's the first prong of it that relates to a specific conviction, whether that's a proper predicate or not. And then the second prong of Beeman is to negate alternative causes for the ACCA sentence that didn't have anything to do with the residual clause. So Beeman involved three convictions, and the defendant there attacked one with a DeCamps claim that was untimely and a timely Johnson claim that the court determined was without merit. The Tribune case, which this court decided a few days ago, involved three convictions that the court had expressly relied on, one that was invalidated under Johnson, and the issue was whether the government could supply This case presents a third factual scenario where the district court expressly relied on four different convictions. Mr. Millender has a timely claim that one of those convictions for shooting from a vehicle is not a proper predicate under Johnson. And so, therefore, he met the first requirement of Beeman. The second requirement of Beeman he can't meet, and that's because those three other predicates the district court expressly relied on negate the causation of the residual clause being the cause of the enhanced sentence. Let me create a hypothetical for you then, too. Certainly. If the district court had not needed to rule on these two, we'll call them two for now, convictions, to render Mr. Millender an ACCA offender at the level that one of the convictions gets thrown out because of Johnson. When you go back to the district court, you argue for the first time, because you didn't have to before, that these are two separate convictions. Does he get to argue that they're really one? And if the district court says they're two, does he get to appeal if we give him a COA? It would make sense to me, Your Honor, that if the court had not expressly relied on a conviction before and we were asserting that the conviction was valid because there were these other convictions it had not relied on, it would make sense to me that it would be the government's burden to establish their validity presently. But that's not what we have here. It's very close. I mean, if you look at the guts of the issue, it's the same thing. It's just who's bringing it up. But if in the hypothetical, you try to bring up these two as separate convictions to supply the three necessary after one's been thrown out because of Johnson, he obviously gets to tell the district court, no, no, no, these are not two, they're one. And if the district court rules in your favor, right, and if we grant a COA, he's up here properly, right? I would think so, Your Honor. What's the difference? I think that the difference is that the Beeman inquiry, if there's a Johnson error, is one of historical fact. And so the issue here is what happened at the district court. The historical fact is the district court made these determinations. The difference in the hypothetical is that the district court didn't make those determinations and the government is trying to cure the problem by establishing the continuing validity of the sentence at that point. But doesn't it make a difference that he challenged that determination both at sentencing and on direct appeal? In part, Your Honor. I mean, he did preserve the issue. He challenged it at sentencing. He challenged it on appeal. But going back to our timeliness argument, he had an opportunity to bring that in a timely 2255 motion. It would have been barred by Frady. Frady says you can't raise on a 2255 when you raised on direct appeal. It would have been barred. You would have raised, I think, you would have raised, and properly so, a Frady bar argument. And we would have likely said, you can't raise it. You raised it on direct appeal. 2255 is not a substitute for direct appeal. This is one of those sort of rare cases that we see, at least from my perspective, where although you may be right at the end of the day, the defendant has done everything procedurally right. He hasn't done anything wrong. He's not trying to bring in a new argument or rely on new law or do anything else. He's preserved the issue all the way through. By luck or by bad fortune, we didn't address the issue the first time around, and now he's trying to get us to address it. And I know equity doesn't always carry the day, but from that sort of perspective, this seems like the case where maybe we should address the substantive issue. No? I see your point, Your Honor. I think maybe a number of these cases probably don't get here because the government makes an assessment of whether after Johnson there are three convictions that are valid predicates. We've made that assessment here, and therefore we're asserting the procedural bar, which is it's an untimely challenge to a claim that's not part of the Johnson analysis. Does the certificate of appealability bar the opposite side, the defendant, from raising this procedural problem? I think we've raised the timeliness argument consistently, Your Honor, throughout the collateral proceedings, initially in our response to the 2255 before there was a Johnson issue. The district court did not grant a certificate of appealability because it determined there wasn't a constitutional issue involved. This court granted one. General rule, and I think it's reflected in the reply brief of Ms. Salant, is that a certificate of appealability is presumed to include the threshold procedural matter. I think there was an argument that the petitioner made in their brief that that doesn't apply when it's the appellate court that grants a certificate of appealability. But I believe there's a line of cases, and I think there was one just about 10 days ago from the court, the Roscoe decision, that held that true for the court of appeals granting the certificate of appealability, that it would consider the procedural issue necessary to reach the merits, even though that procedural issue wasn't specifically raised in the certificate of appealability. If we do reach the merits, how do you get around sweeting? Sweeting, Your Honor? Yes. I mean, in that case, there was a burglary, and the person to escape flees the home that he had unlawfully entered, goes into a second home, commits the same offense, and is then caught. He certainly had time to figure out between burglary one and burglary two, whether he was going to go to burglary two, and yet this court, in one of its very early decisions on the separate offenses matter, held that it was one occasion. How does that differ from the circumstances here? Well, Your Honor, there's been a number of cases on burglary, and I think a lot of these cases are fact-bound. The sweeting case? I've checked a lot, and I can't find a single gunshot case in the country involving this issue, not a single one, just by happenstance. So we're analogizing from other crimes because we have to. Certainly, Your Honor. Sweeting was followed by Pope, which also involved burglaries in relatively close proximity, reached a different outcome, and the holding in Pope was so long as the predicate crimes are successive rather than simultaneous, they constitute separate criminal episodes. I know the problem is that sweeting came first. Understood, Your Honor. I think that the Lee case that followed that attempted to reconcile the different outcomes and mentioned that sweeting was a little bit short on facts or explanation, but the different opinions reflected the different panels' judgment about how meaningful the opportunity to desist was, and that in the sweeting case, the defendant had been under hot pursuit by the police, and therefore there wasn't a meaningful opportunity. The case that seemed to me, two cases that seemed to me to be a little bit more useful were the Spears decision, and I don't think either side cited them in its brief, but I think the district court relied on it in its order, denying the 2255, which is 443 F. 3rd, 1358, 1360, two robberies, two minutes apart, and found that those were separate occasions. The Weeks case, I think, is also useful, which we cited in our brief, 711 F. 3rd at 1261. Issue there was burglary of two structures, same day. The defendant argued that he'd walked 56 feet between one in 13 seconds before the next burglary, and that therefore they were on the same occasion. All the cases, or I should say all, the great majority of the cases that follow Sweeting strongly support your position here on the merits. The problem, I think, if we get there is Sweeting, and you're right that Sweeting was short on analysis, but there is a holding. Right. So let me give you another hypothetical. So Mr. Meilander has the argument with these two gentlemen, and he fires one shot. The shot goes through the leg of one of the gentlemen, hits the second gentleman who was standing behind the first. He's charged with and convicted with two aggravated battery offenses in state court. Separate occasions or not? I would say not, Your Honor, and the reason is that that's not a distinct aggression. One shot, two victims may support two counts under state law, but when he shoots twice, bang, bang, that's two different. That's right, Your Honor, and that was the district court's reasoning in which we think is correct, which is there's two conscious acts of aggression. There's a meaningful opportunity to refrain and not engage in the second act, and therefore these are necessarily successive acts, just as in weeks where you had a burglary and then a burglary completed in another in 13 seconds, according to the defendant. In weeks, the court said that was sufficient to sustain the government's burden by preponderance of evidence. What if he fired two shots at one victim and one shot hit the victim and the other missed? Would there be a separate crime for each of those shots, one for assault and one for battery? If there were two shots and one missed one victim and one hit the other victim? No, one victim. Oh, I'm sorry, Your Honor. Yeah, one shot missed him, so that would be assault, and one shot hit him, so that would be battery. Would that be two incidents? I think it would be a much more difficult issue, Your Honor. The cases suggest that different victims is more probative of separate occasions and more probative of a distinct aggression and a conscious decision than would be one victim in a repeated attack, so I think it would be a concern. What if he had a machine gun and did one pull the machine gun and hit three separate victims with one shot? Would that be three incidents or one? I think, to me, Your Honor, that sounds more like a robbery of multiple victims, which the courts have said is not, you know, it's a single act that you're committing. There are multiple victims, but that is one act, and so firing a machine gun, to me, that has consequences against multiple victims would seem to be one criminal episode. Go ahead. We don't have any information here, given the limited paragraph in the pre-sentence investigation report about how much time, if any, elapsed between the two shots, what sort of a firearm was used, whether it was automatic, semi-automatic, neither one of the two. We have none of that information, right? Not how far away the two victims were. We have none of that here, right? That's correct, Your Honor. The record is silent on those points. How do you get to a preponderance? I can certainly see there is a possibility that he had a meaningful opportunity to consider the second shot, but I'm not sure that I see enough evidence to make it more likely than not. How do we get from a possibility to more likely than not? I think it's the same preponderance that the court found in the Weeks case, Your Honor, which is that one burglary is complete, and then there's another conscious decision to complete a burglary. Now, there may be other evidence, like in the Sweeting case, that's indicative that there wasn't a meaningful opportunity, but there's not that evidence in this case. There's only what you have in Weeks. You have successive crimes and the court drawing an inference that there's an opportunity to refrain from the successive criminal activity. So if the evidence is in equipoise, who wins? I believe under McLeod, the party with the burden would lose, Your Honor, so it would be the government on sentencing or on direct appeal. Here, it would be the petitioner as the moving party on collateral review. If there are no other questions, thank you, Your Honor. We ask the court to affirm the judgment. Thank you very much. This is by far the most interesting case I have ever been able to argue. I think that the facts are, they're like every law school exam question that we never hope to get, most certainly. It was interesting to hear Judge Jordan, you raised the idea of one bullet because I have been kicking myself for the two years that we've had this case that nobody raised that at sentencing because who's to say it wasn't one bullet? If the court wouldn't mind, I'd like to read the court exactly what Mr. Millender pled to at his state court sentencing on these two convictions or these two crimes, and they were convictions in state court. Although we had the PSR and the defendant didn't object to those facts, I think that because the PSR is not technically a Shepard document, the judgment from the state court might shed some light or maybe not. It says, on this date, the defendant fired a gun and the two victims were struck by bullets. Witnesses indicate that the victims also had a firearm and had threatened the defendant. Knight, the victim, lied to the police about the fact that Kastarfan, who was the other victim, had a gun. Millender had retrieved his gun and when he left the area, according to witnesses, returned the gunfire and struck Knight and Kastarfan. So really, to me, it sounds like the shooting was as he was leaving the scene of an argument, and it doesn't sound like he stopped, he shot one victim, he turned, and he shot another. But my opinion as to what the facts are aren't the most compelling evidence, or the most compelling thing for this court to consider. I think what this court should consider was that in McLeod, this court previously said, we can't stretch, we can't fill in blanks with our own assumptions. If it is not clear from the record, we cannot find that there are three separate convictions. And then another point I'd like to make is that the government has indicated that the lower court explicitly found, or I'm sorry, explicitly relied on these four convictions, that being separating the aggravated battery convictions. But I would offer that the lower court didn't explicitly rely on these. In fact, the exact opposite, the court said, it's not relying on these as separate because it didn't need to. Although the district court did make a statement. It did make a statement. It didn't go around that it thought that they were different offenses. Absolutely. No, the court definitely made a finding that in its opinion, they were separate, but that it was not relying on the fact that they were separate in order to impose the ACCA enhanced sentence. So to me, that goes back to this timeliness argument about, well, you know, the court, there were four. So now we've taken away one. And so now there are three. But the court never said there were four. It said, I'm relying on these three. And so now we're back to this counting problem of how do we decide if these were separate offenses. As far as Pope is concerned, I think that there's a great portion of Pope that relies, that cites too many cases. One of them is actually a case that Judge Seiler was on years ago, Graves. And in those cases, it relies on, you know, it talks, the Pope relied on these cases and talked about how close they were in time. And I think, you know, another case that's relevant is Petty, which is one that the SG, excuse me, the Solicitor General conceded that this was not the kind of, this is not the scenario that Congress had in mind when it imposed the ACCA. And Petty was, of course, the case where the defendant went into a restaurant and held up six people. Of course, the defendant had to think, while he was standing there, there are six people here and I'm robbing six different people. But everybody agreed that he didn't form six different intents, you know, or six different, there weren't, those robberies were not temporally distinct. He had his six victims in front of him. He chose to rob them as one criminal act. And if that's all, I would ask that you reverse and remand for Mr. Millender to have his actions resentenced. Thank you. All right, thank you both very much. Thank you.